*383 The opinion of the Court was delivered by
Duncan J.
in giving a construction to this lease, we must take into view, the subject matter of the contract, species of property to which it related, and the place in which the right of Cleland over the property, was to be exercised. If this were a general hiring of ei slave in Maryto an inhabitant of Maryland, it would be difficult to maintain the right of the lessee or bailee to do an act which would extinguish the property itself. There would necessarily be implied an engagement-on his part to restore the slaves. The contrary implication. would be highly unreasonable. That he had authority to do an act which'¡would put it out of his power to restore them', Would be an instance of folly that cannot be imputed to any one capable of entering into a binding contract..-( But this was not a general hiring, but a special one. The negroes were demised with the land, for the purpose of cultivating the farm. Though this is a claim of freedom, we are-not in ^ favour of,'liberty to lose sight that this class of people are acknowledged as slaves by the laws of both States. The master has a property in them, and contracts respecting this species of property, are to be construed by the same rules of interpretation, that contracts respecting any other species of property areJ We are not at liberty to infer a power of removal, when the contract-itself takes away all implication, and states the very purpose for which they were hired, to cultivate this farm of Norman Bruce, devised by him to Cleland. It follows, that the de-; cisión of the Court was' correct in stating that the consent of Cleland to remove Charity-into this State,'would not entitle her to her freedom. The continuing of a sojourner, must be a single, unbroken one, for six months. There may be cases of a fraudulent shuffling backwards and forwards into Pennsylvania,, and then into' Maryland, and then back to Pennsylvania. This might be in fraud of the law, and would present a different question ; but here there is no evasion—no ground even for suspicion of evasion.
It was well known to the framers of our Acts for the Abolition of slavery, that southern-gentlemen with their families, were in the habit of visiting this State, attended with their domestic slaves, either for pleasure,'health, or business; year after year passing the summer months with us, their *384 continuance scarely ever amounting to six months. If these successive sojournings were to be summed up, it would amount to a prohibition—a denial of the rights of hospitality. The Tork and Bedford springs are watering places frequented principally, and in great numbers, by families from Maryland and Virginia, attended by their domestic slaves. The same families with the same servants return in each season. The construction contended for by the plaintiffs in error, would be an exclusion of the citizens of our sister States from these fountains of health, unwarranted by any principle of humanity or policy, or the spirit and letter of the law. The retaining a slave for six months by a sojourner, may well be compared to the hiring and service for one year, to obtain a settlement under the poor laws, which must be an entire hiring, and an entire service for the year; or to the period prescribed as a limit to the recovery of real estate where the adverse possession must be continuous, unbroken and unirtterrupted. It must be one hiring, and one entire' service under the poor laws. It must be continued possession for one interrupted period of twenty-one years under the Limitation Act. And under this’law, the retaining must be for one unbroken point of time—one entire six months, and cannot be made up of different points of time joined together.
I cannot agree with the counsel of the plaintiffs in error, that the Court did throw the onus of proof of the master’s consent, on the slave. All they said, was, if it appeared to the jury from the evidence, that Charity was not brought into Pennsylvania with the knowledge or connivance of Norman Bruce, and no authority was given directly or indirectly by Bruce to Cleland or Gilleland, to bring her into Pennsylvania, she continued his sla've. The fourth point is nearly the same as the second, for the reasons already stated, that the master’s lease to Cleland, was no evidence of his leave to Cleland to bring her into Pennsylvania. It is so far from affording such prima facie evidence, of an intention to grant a licence to remove the negroes into Pennsylvania, that as clearly as language can exclude such construction, it isjjhere done. It would not be a power necessarily incident to the use of the thing demised, because the slaves are to be used in the cultivation of the farm in Maryland. A presumption could not be raised of such intention, because it is *385 against all reason and all probability. It is contended, that every slave brought into this State, and remaining here for six months, unless he is an absconding or runaway slave, became ipso facto free, and that whether the party removing him had authority or not, to bring him in. This construction would be a reproach to the framers of the Acts for the abolition of slavery, as it would be an outrage on the property of the citizens of another State, where slavery is tolerated—a confiscation and forfeiture of their rights, without any act done by them in violation of the laws of this State. It would be an invitation and reward offered to strangers who .had no right or authority, to bring slaves into our State—to overseers, to bring over the gangs of negroes entrusted to their superintendance. Nay, on this principle, if the negro were stolen from Maryland and' brought into this State, he would become free. The Legislature wisely and humanely desirous to abolish gradually slavery in this State, have cautiously preserved the rights of citizens of other States whose slaves are introduced into this State without theijr knowledge.
The 10th section of the Act of 1st March, 1780, provides, that no man or woman, of any nation or colour,, except the negroes and mulattoes, 'who shall be registered, shall be holden within the territories of this Commonwealth as slaves or servants for life, except domestic slaves of delegates to Congress from other States, foreign ministers, &c., and persons passing through and sojourning in this'State. ■
The 11th section provides, that the Act shall not give relief or shelter to any absconding or. runaway negro or mulatto slave or servant for life, who has or shall absent himself from his or her owner or master ; but he shall have right and aid to demand, claim, and take away his servant or slave, as he might have had in case this Act had not been made, and that all.negro and mulatto slaves now owned . and heretofore resident in this State, who have absented themselves or been clandestinely carried away, before the passing of this Act ,may be.registered within five years. Absenting themselves, absconding, being clandestinely carried away, in all these cases, I am of opinion, that the interest of the master is secured*; the slave who is removed into this State, without the consent or connivance of the master, may be considered as a slave- absenting himself, absconding, or clandestinely carried away; ' *386 and that such removal under the 4th article, section 2d of Constitution of the United States, would be an escaping into another State ; and that under that article, the slave coming ^nt0 the State, in any other way than by the consent of the owner, whether he comes in as a fugitive or runaway, or is brought in by those who have no authority so to do, cannot be discharged under any law of this State, but must be delivered up on claim of the party to whom his services or labour may be due.
The opinion of the Court was, in all matters on which they were requested to charge the jury, entirely ■ correct; and it wais left to the jury with the opinion of the Court on the general question of law, with all accuracy, that if they believed that neither Cleland nor Mrs. Gilleland were the agents of Norman Bruce, and that if the removal óf .Charity into the State of. Pennsylvania was without the consent or approbation of Bruce the master, such removal did not entitle the plaintiffs to freedom ; and that if no authority directly or indirectly - was given by Bruce to Cleland or Gilleland to remove Charity, that the verdict should be for the defendant. The judgment is therefore affirmed.
Judgment affirmed.